CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 4 2008

JOHN F. CORCORAN, CLERK
BY:
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

ALICE M. DEANE,  )
                 )
    Plaintiff,   )   Civil Action No. 5:07CV00081
                 )
v.               )   **MEMORANDUM OPINION**
                 )
MICHAEL J. ASTRUE,   )   By: Hon. Glen E. Conrad
Commissioner of Social Security,  )   United States District Judge
                 )
    Defendant.   )

Plaintiff, proceeding pro se, has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The issues presently before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration.[1] See 42 U.S.C. § 405(g).

The plaintiff, Alice M. Deane, was born on December 24, 1958. She eventually completed the tenth grade. Ms. Deane has past relevant work experience as a convenience store cashier and as a produce clerk at a farmers' market. Ms. Deane filed applications for disability

---

[1] The court notes that plaintiff has submitted briefs and attachments indicating that the Court of Appeals of Virginia found no error in an award granted to her by the Virginia Workers' Compensation Commission, and that she is seeking relief in the form of damages related to her workers' compensation claim. However, this case is not before the court on the issue of whether plaintiff is entitled to benefits under the Virginia Workers' Compensation Act, or the enforcement of any decision made pursuant to that Act. Furthermore, an award of benefits under the Virginia Workers' Compensation Act does not indicate an entitlement to benefits under the Social Security Act. See 20 C.F.R. §§ 404.1504 and 416.904.

insurance benefits and supplemental security income benefits on July 13, 2004. She alleged that she became disabled for all forms of substantial gainful employment on August 20, 2003, due to anxiety/depression, fibromyalgia, and tendonitis.[2] Ms. Deane now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Ms. Deane met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Ms. Deane's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 22, 2006, the Law Judge also determined that Ms. Deane is not disabled. The Law Judge found that plaintiff suffers from tendonitis in her left hand and wrist, and that this impairment is severe within the meaning of the regulations, but that plaintiff's fibromyalgia and depressive/anxiety disorder are non-severe. The Law Judge then assessed plaintiff's residual functional capacity as follows:

> [T]he claimant has the residual functional capacity to perform work at the light exertional level. Specifically, the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand/walk for about 6 hours in an 8 hour day, can sit for about 6 hours in an 8 hour day and can perform limited pushing and pulling with her upper extremities. She can also perform occasional climbing, balancing, stooping, kneeling, crouching and crawling, can perform occasional overhead reaching, and can frequently, but not constantly use [her] left non-dominant hand. She can further perform jobs which do not require even moderate exposure to extreme hot or cold.

---

[2] The record reveals that Ms. Deane continued working past her alleged onset date of August 20, 2003. The Law Judge noted, however, that it is not entirely clear whether the work performed by Ms. Deane, after her alleged onset date, constituted substantial gainful activity. Thus, the Law Judge "reserve[d] a finding on whether the claimant engaged in disqualifying substantial gainful activity after her alleged disability onset date." (Tr. 17).

(Tr. 18). After considering testimony from a vocational expert, the Law Judge ruled that Ms. Deane retains sufficient functional capacity to return to her past relevant employment as a cashier or produce clerk. Accordingly, the Law Judge ultimately concluded that she is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Ms. Deane has now appealed to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. The court believes that the medical record supports the Law Judge's finding that Ms. Deane retains sufficient physical capacity for a limited range of light work activity.[3] However, the court finds that the medical

---

[3] The court notes that the Law Judge's finding in this regard is supported by reports from several treating and consultative physicians.

record does not support the Law Judge's determination that the plaintiff's depressive/anxiety disorder is a non-severe impairment.

Under the regulations, a severe impairment is characterized as one that significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c) and 416.920(c). Examples of basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b) and 416.921(b). The United States Court of Appeals for the Fourth Circuit has held that "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis in original); see also Social Security Ruling No. 85-28 ("An impairment . . . is found 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . .").

4

In the instant case, it is clear that, at a minimum, Ms. Deane suffers from a "severe" psychological impairment. The record reveals that Ms. Deane was diagnosed with chronic anxiety and depression by her primary care physician, Dr. Dennis L. Hatter, in 1997 (Tr. 253), and that she has a history of intolerance to antidepressant medications (Tr. 214, 220, 239, 285, 320). On October 3, 2003, Dr. Hatter noted that plaintiff "has tried almost all the antidepressants and has had some problems with each of these." (Tr. 220). Likewise, in a letter dated August 10, 2004, Dr. Hatter emphasized that plaintiff's depression "has been extremely difficult to treat because of her multiple medication intolerances." (Tr. 214).

Due to plaintiff's history of intolerance to antidepressant medications, Dr. Hatter referred plaintiff to a psychiatrist. (Tr. 215). Dr. Thomas Jayne performed an initial psychiatric evaluation on September 1, 2004. (Tr. 288-291). Based on the evaluation, Dr. Jayne diagnosed plaintiff with dysthymic disorder[4] and generalized anxiety disorder, and assessed a Global Assessment of Functioning (GAF) score of 50.[5] He restarted plaintiff on Paxil and continued her prescription for Klonopin. (Tr. 291). When plaintiff proved to be intolerant to Paxil, Dr. Jayne prescribed Cymbalta, which caused her to suffer from severe dizziness. (Tr. 287). Consequently, in November of 2004, Dr. Jayne prescribed Elavil for plaintiff's "ongoing anxiety/depression." (Tr. 287). Plaintiff's medications were readjusted again in December of 2004, January of 2005, and February of 2005, and on March 4, 2005, Dr. Jayne indicated that

---

[4] "The essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition Text Revision, 376 (2000) (DSM-IV-TR).

[5] The GAF scale ranges from zero to 100 and "consider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV-TR at 34. A GAF of 41 to 50 indicates "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Id.

5

plaintiff was "intolerant of most medications." (Tr. 285). Plaintiff returned to Dr. Jayne on June 17, 2005. Dr. Jayne noted that plaintiff had a "better affect" at that time, but that she continued to suffer from "ongoing anxiety." (Tr. 284).

On August 18, 2005, Dr. Joseph Cianciolo, a licensed clinical psychologist, performed a consultative evaluation at the request of the state disability agency. (Tr. 292-294). Based upon the evaluation, Dr. Cianciolo diagnosed plaintiff with major depressive disorder, single episode, moderate, and assessed a GAF (current) of 55 and a GAF (past year) of 55.[6] (Tr. 293). Dr. Cianciolo also evaluated plaintiff's ability to perform work-related activities, opining as follows:

> [I]t appears that the patient does possess the intellectual capability necessary to perform detailed and complex tasks as well as simple and repetitive tasks. Her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and completing a normal workday or workweek without supervision appears to be moderately impaired as a function of psychiatric factors. As to what effect her medical condition would have upon these abilities, this examiner would defer to the patient's treating physician. It is unlikely that she would require additional supervision. She does appear to be capable of accepting instruction from supervisors. Her ability to interact with coworkers and the public as well as coping with routine stressors encountered in competitive work appears to be moderately impaired. There is no indication for inpatient psychiatric treatment at the present time. The continuation of outpatient treatment would be recommended. The patient does appear to be capable of adequately managing her own funds. Prognosis for significant change would appear to be guarded.

(Tr. 293-294).

On October 8, 2005, Dr. David L. Niemeier completed a mental residual functional capacity assessment at the request of the state agency. In the assessment, Dr. Niemeier

---

[6] A GAF of 51 to 60 indicates "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

6

emphasized that Ms. Deane "has a history of depression and a panic disorder." (Tr. 304). Likewise, on an accompanying psychiatric review technique form, Dr. Neimeier indicated that plaintiff suffers from a major depressive order and a panic disorder. (Tr. 310, 312). Based on his review of plaintiff's medical records, including the consultative report from Dr. Cianciolo, Dr. Neimeier opined that plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 302-303).

On January 12, 2006, Dr. Hatter prescribed Wellbutrin for plaintiff's chronic anxiety and depression. (Tr. 321). Approximately four months later, plaintiff advised Dr. Hatter that she was no longer taking the medication because "she did not feel well on [it]." (Tr. 320). Dr. Hatter again noted that Ms. Deane "just seems to have intolerance to any of the antidepressants that have been tried on her." (Tr. 320).

In determining that Ms. Deane's depression and anxiety are not severe impairments, the Law Judge emphasized that there is no evidence that Ms. Deane sought further treatment from a psychiatrist following her June 2005 appointment with Dr. Jayne, "or that she has had significant problems with anxiety or depression since then." (Tr. 18). However, based on the aforementioned review of the record, the court is unable to conclude that the Law Judge's assessment of Ms. Deane's psychological impairments is supported by substantial evidence. The simple fact is that Ms. Deane has been treated for depression and anxiety for many years. Although the record indicates that she was last seen by Dr. Jayne in June of 2005, plaintiff

7

continued to undergo treatment by her primary care physician. Moreover, Ms. Deane has been diagnosed with one or more psychological impairments by every mental health source who has examined her personally or reviewed her medical records, and both Dr. Cianciolo, who performed a consultative evaluation at the behest of the state agency, and Dr. Neimeier, who completed the mental residual functional capacity assessment, concluded that plaintiff's psychological impairments moderately limit her ability to perform several work-related activities. The court notes that the psychologists' opinions regarding plaintiff's work-related limitations are consistent with her GAF scores, which ranged from 50 in September of 2004 to 55 in August of 2005. Accordingly, the court concludes that the Law Judge's finding with respect to the severity of Ms. Deane's depression and anxiety is not supported by substantial evidence.

For the reasons stated, the court finds "good cause" for remand of this case to the Commissioner for further consideration and development as to the issue specified above. If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 4th day of March, 2008.

_____
United States District Judge